**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER TAYLOR, | |
| Plaintiff, | Civil Action No. _____ |
| v. | **COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |
| BLACK KNIGHT, INC., ANTHONY M. JABBOUR, CATHERINE L. BURKE, THOMAS M. HAGERTY, DAVID K. HUNT, JOSEPH M. OTTING, GANESH B. RAO, JOHN D. ROOD, and NANCY L. SHANIK, | |
| Defendants. | **JURY TRIAL DEMAND** |

Plaintiff Christopher Taylor ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Black Knight, Inc. ("Black Knight" or the "Company") and Black Knight's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Intercontinental Exchange, Inc. through its wholly-owned subsidiary Sand Merger Sub Corporation (collectively "ICE").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on August 19, 2022. The Proxy recommends that Black Knight stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Black Knight is acquired by ICE. The Proposed Transaction was first

disclosed on May 4, 2022, when Black Knight and ICE announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which ICE will acquire all of the outstanding shares of common stock of Black Knight for $85.00 per share (the "Merger Consideration"). The deal is valued at approximately $13.1 billion and is expected to close in the first half of 2023.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the background on the Proposed Transaction, financial projections prepared by Black Knight management, as well as the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan"), Black Knight's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Black Knight's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Black Knight's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Black Knight.

6.     Defendant Black Knight is a corporation organized and existing under the laws of

the State of Delaware. The Company's principal executive offices are located at 601 Riverside Avenue, Jacksonville, Florida 32204. Black Knight common stock trades on the New York Stock Exchange under the ticker symbol "BKI."

7.      Defendant Anthony M. Jabbour has been a director of the Company since 2018. Defendant Jabbour currently serves as Executive Chairman of the Board.

8.      Defendant Catherine L. Burke has been a director of the Company since 2020.

9.      Defendant Thomas M. Hagerty has been a director of the Company since 2014.

10.      Defendant David K. Hunt has been a director of the Company since 2014.

11.      Defendant Joseph M. Otting has been a director of the Company at all times relevant hereto.

12.      Defendant Ganesh B. Rao has been a director of the Company since 2014.

13.      Defendant John D. Rood has been a director of the Company since 2014.

14.      Defendant Nancy L. Shanik has been a director of the Company since 2019.

15.      Nonparty Intercontinental Exchange, Inc. is a corporation organized and existing under the laws of the State of Delaware. ICE's principal executive offices are located at 5660 New Northside Drive, Third Floor, Atlanta, Georgia 30328. ICE common stock trades on the New York Stock Exchange under the ticker symbol "ICE."

16.      Nonparty Sand Merger Sub Corporation is a Delaware Corporation and is a wholly owned subsidiary of Intercontinental Exchange, Inc.

## JURISDICTION AND VENUE

17.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

20.     Black Knight is a software, data and analytics company in the mortgage lending and servicing and real estate industries, as well as the capital and secondary markets.

21.     On May 4, 2022, the Company entered into the Merger Agreement with ICE. According to the press release issued that day announcing the Proposed Transaction:

**Intercontinental Exchange Enters into Definitive Agreement to Acquire Black Knight**

*Adding Black Knight's integrated solutions significantly strengthens ICE's mortgage technology ecosystem; extends track record of digitizing vital networks*

**ATLANTA, NEW YORK & JACKSONVILLE, Fla**.--(BUSINESS WIRE)-- Intercontinental Exchange, Inc. (NYSE: ICE), a leading global provider of data, technology, and market infrastructure, today announced it has entered into a definitive agreement to acquire Black Knight, Inc. (NYSE: BKI), a software, data and analytics company that serves the housing finance continuum, including real estate data, mortgage lending and servicing, as well as the secondary markets. The cash and stock transaction values Black Knight at $85 per share, or a market value of $13.1 billion, and builds on ICE's position as a provider of end-to-end electronic workflow solutions for the rapidly evolving U.S. residential mortgage industry.

The definitive agreement has been unanimously approved by the Boards of Directors of both companies.

4

Black Knight, based in Jacksonville, Florida, has approximately 6,500 employees and is a long-time driver of innovation in the mortgage industry. The company provides a comprehensive and integrated ecosystem of software, data, and analytics solutions serving the real estate and housing finance markets. The Black Knight ecosystem adds value for clients of all sizes across the mortgage and real estate lifecycles by helping organizations lower costs, increase efficiencies, grow their businesses, and reduce risk.

The addition of Black Knight's technology solutions, real estate and mortgage-related data assets, leading analytics, and its team of mortgage and technology professionals complements and strengthens ICE's rapidly growing mortgage technology business. The combination will result in improvements in the mortgage lending process for borrowers and lenders by increasing automation and efficiencies that lower the cost of obtaining a mortgage, while harnessing data that can help current homeowners lower their monthly payments and lessen the likelihood of default.

"Since our founding in 2000, ICE's simple mission has been to make analog and opaque financial transactions more digital and transparent, beginning with commodity markets, extending across a large array of asset classes, and most recently working to help streamline the mortgage industry," said Jeffrey C. Sprecher, Founder, Chair and CEO of Intercontinental Exchange. "Black Knight shares our passion for leveraging technology to serve customers and households, and, with our expertise in operating networks and marketplaces, our planned acquisition will bring to life a true end-to-end solution for the mortgage manufacturing and servicing ecosystem, benefitting aspiring and current homeowners across the United States."

"Black Knight has been on a successful journey to transform the mortgage industry by providing our clients with powerful, interconnected solutions that help them achieve greater efficiency and better serve their customers," said Anthony M. Jabbour, Chairman and CEO of Black Knight, Inc. "We believe this combination is the right next step in that journey. Black Knight and ICE share a common vision and commitment to deliver a better experience for our clients and the stakeholders we serve, and to ultimately streamline the homeownership process. By combining our expertise, we can deliver significant benefits to our clients and consumers by improving and streamlining the process of finding a home, as well as obtaining and managing a mortgage."

"This transaction will benefit ICE, Black Knight, and our collective shareholders," said Warren Gardiner, Chief Financial Officer of Intercontinental Exchange. "Black Knight's high-growth, recurring revenue stream will further complement our 'all weather' business model, while the strength of ICE's balance sheet, and our combined cash flows, position this transaction to be accretive to adjusted earnings per share1 in the first full year."

The transaction is expected to close in the first half of 2023, following the receipt of regulatory approvals, Black Knight stockholder approval, and the satisfaction of customary closing conditions.

**Key Financial Metrics:**

- Transaction valued at $85 per share, or a total market value of $13.1 billion, with consideration in the form of a mix of cash (80%) and stock (20%).

  - Cash consideration of $10.5 billion expected to be funded with newly issued debt and cash on hand at the time of close.

  - Stock consideration valued at approximately $2.6 billion based on ICE 10-day VWAP as of May 2, 2022 of $118.09.

  - Black Knight shareholders can elect to receive either cash or stock, subject to proration, with the value of the cash election and the stock election equalized at closing.

- Enterprise value of approximately $16 billion represents ~15x fully synergized 2022 Black Knight adjusted EBITDA.

- Expect to realize cost synergies of $200 million, with one-third realized by year one, two-thirds by year three, and full synergies realized by year five.

- Expect to realize revenue synergies, net of related costs, of approximately $125 million by year five.

- Expected Black Knight transaction IRR of 10%

- Expect that the acquisition of Black Knight will be accretive to adjusted EPS1 in the first full year post-close.

- Transaction expected to close in the first half of 2023, subject to satisfaction of customary conditions including receipt of Black Knight stockholder approval and Hart-Scott-Rodino (HSR) review and clearance.

**B. The Materially Incomplete and Misleading Proxy**

22.     On August 19, 2022, Defendants filed the Proxy with the SEC. The purpose of the

Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary

for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

However, significant and material facts were not provided to Plaintiff. Without such information,

6

Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts

23.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of Black Knight relating to its business." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Black Knight's management provided to the Board and J.P. Morgan.

24.     Notably, Defendants failed to disclose: (a) line item entries forming the basis of the calculation of Adjusted EBITDA and Adjusted EPS; (b) key timing events related to the projections, specifically when the management projections were created, put into final form, and approved by Black Knight management for J.P. Morgan's use in connection with its fairness opinion; (c) the unlevered free cash flows the Company is expected to generate during fiscal years 2022E through 2026E; (d) the terminal unlevered free cash flows J.P. Morgan applied in its Discounted Cash Flow Analysis; (e) the definition of "unlevered free cash flow" as the term is used by J.P. Morgan; (f) the line item entries forming the basis of the forecasts; and (g) the summary of financial projections for ICE that were reviewed or used by Black Knight, the Board, and/or J.P. Morgan in connection with their analysis of the Proposed Transaction.

25.     This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning J.P. Morgan's Financial Analyses

26.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (a)

the key data, inputs, and assumptions underlying the range of discount rates applied by J.P. Morgan; (b) the Company's terminal values; and (c) the Company's net debt and other adjustments as of December 31, 2021.

27.      With respect to the *Public Trading Multiples Analysis,* the Proxy Statement fails to disclose the specific financial multiples and metrics for each of the transactions analyzed by J.P. Morgan.

### *Materially Incomplete and Misleading Disclosures Concerning the Background of the Proposed Transaction*

28.      The Proxy also fails to disclose material information concerning the background of the Proposed Transaction.

29.      Specifically, the Proxy fails to disclose terms of confidentiality agreements ("NDAs") the Company entered into with bidders in the course of the events leading up to the Proposed Transaction, including whether any of the NDAs contain "don't-ask, don't-waive" standstill provisions which are presently barring a party from submitting a topping bid for the Company.

30.      The Proxy does not disclose the terms of the standstill provisions, whether the standstill provisions are still in effect or have been waived, and which of the parties cannot make a superior proposal for the Company. The disclosure of the terms of any standstill provisions is crucial to Plaintiff being fully informed of whether his fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

31.      This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make

a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

32.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

33.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

34.     Further, the Proxy indicates that on May 4, 2022, J.P. Morgan reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Black Knight stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning J.P. Morgan's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

35.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

37.     Defendants have filed the Proxy with the SEC with the intention of soliciting Black Knight stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

38.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Black Knight, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Black Knight shares and the financial analyses performed by J.P. Morgan in support of its fairness opinion; and (iii) the background of the Proposed Transaction.

41.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and

recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan reviewed and discussed its financial analyses with the Board during various meetings including on May 4, 2022, and further states that the Board considered J.P. Morgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

42.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Black Knight within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Black Knight and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

47.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Black Knight stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 2, 2022                    **ROWLEY LAW PLLC**


*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*